No. 24-2746

_____

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

_____

FRANK MARSHALL and
VICKIE MARSHALL,

       Plaintiffs-Appellants,

  v.

WISCONSIN ELECTIONS
COMMISSION, et al.,

       Defendants-Appellees.

_____

APPEAL FROM A DECISION AND JUDGMENT ENTERED IN THE U.S.
DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN,
HON. WILLIAM C. GRIESBACH PRESIDING

_____

**APPELLEES' BRIEF**

_____

JOSHUA L. KAUL
Attorney General of Wisconsin

FAYE B. HIPSMAN
Assistant Attorney General
State Bar #1123933

BRIAN P. KEENAN
Assistant Attorney General
State Bar #1056525

Attorneys for Defendants-Appellees

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9487 (FBH)
(608) 266-0020 (BPK)
(608) 294-2907 (Fax)
hipsmanfb@doj.state.wi.us
keenanbp@doj.state.wi.us

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................1

JURISDICTIONAL STATEMENT ...................................1

STATEMENT OF THE ISSUES ........................................2

STATEMENT OF THE CASE ............................................2

    I.    Wisconsin's nomination paper process for independent presidential candidates................................3

    II.    Ayyadurai's nomination papers and ballot access challenge.................................................................5

    III.    Procedural background for Plaintiffs' lawsuit ...............6

SUMMARY OF THE ARGUMENT ...................................7

STANDARD OF REVIEW ..................................................8

ARGUMENT ........................................................................9

    I.    Plaintiffs' claims are moot because the presidential election is over, and they are not capable of repetition yet evading review. ........................................9

    II.    The Commission properly denied Ayyadurai's access to the Wisconsin presidential ballot ...........................15

CONCLUSION..................................................................20

# TABLE OF AUTHORITIES

## Cases

*Acevedo v. Cook Cnty. Officers Electoral Bd.*,
   925 F.3d 944 (7th Cir. 2019) ...................................................... 12

*ACORN v. Edgar*,
   56 F.3d 791 (7th Cir. 1995) ...................................................... 17

*Am. Party of Texas v. White*,
   415 U.S. 767 (1974) ...................................................... 14

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) ...................................................... 14

*Arnett v. Webster*,
   658 F.3d 742 (7th Cir. 2011) ...................................................... 9

*Ayyadurai v. Garland*, No. CV 23-2079 (LLA),
   2024 WL 2015287 (D.D.C. May 7, 2024) .................................. 5, 13

*Billman v. Indiana Dep't of Corr.*,
   56 F.3d 785, (7th Cir. 1995.) .................................................... 8, 17

*Burroughs v. U.S.*,
   290 U.S. 534 (1934) ...................................................... 17

*Ciarpaglini v. Norwood*,
   817 F.3d 541 (7th Cir. 2016) ...................................................... 10

*Communist Party of Indiana v. Whitcomb*,
   414 U.S. 441 (1974) ...................................................... 13

*Cook v. Gralike*,
   531 U.S. 510 (2001) ...................................................... 17

*Felton v. City of Chicago*,
   827 F.3d 632, (7th Cir. 2016.) .................................................... 8

*Gill v. Linnabary*,
   63 F.4th 609 (7th Cir. 2023) ...................................................... 11

*Gill v. Scholz*,
  962 F.3d 360 (7th Cir. 2020) .......................................................... 12

*Hero v. Lake Cnty. Election Bd.*,
  42 F.4th 768 (7th Cir. 2022) ................................................... 11, 12

*Hoskins v. Poelstra*,
  320 F.3d 761 (7th Cir. 2003) ............................................................ 8

*Illinois State Bd. of Elections v. Socialist Workers Party*,
  440 U.S. 173 (1979) ....................................................................... 14

*Indiana Green Party v. Morales*,
  113 F.4th 739 (7th Cir. 2024) ....................................................... 17

*Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013) ........................................................................... 16

*Jenness v. Fortson*,
  403 U.S. 431 (1971) ....................................................................... 13

*Lauters v. Nebraska Sec'y of State*, No. 4:24-CV-3175,
  2024 WL 4517911 (D. Neb. Oct. 17, 2024) ........................... 18–19

*Lee v. Keith*,
  463 F.3d 763 (7th Cir. 2006) ................................................... 10, 17

*Lubin v. Panish*,
  415 U.S. 709 (1974) ....................................................................... 13

*Lupo v. Hargett*, No. 3:24-CV-01088,
  2024 WL 4583524 (M.D. Tenn. Oct. 25, 2024) ...................... 14, 19

*Mandel v. Bradley*,
  432 U.S. 173 (1977) ....................................................................... 14

*Moore v. Harper*,
  600 U.S. 1 (2023) ........................................................................... 16

*Moore v. Ogilvie*,
  394 U.S. 814 (1969) ................................................................. 11, 13

*Munro v. Socialist Workers Party*,
  479 U.S. 189 (1986) ................................................................. 13–14

*Norman v. Reed,*
  502 U.S. 279 (1992) ...................................................... 14

*Richardson v. Ramirez,*
  418 U.S. 24, (1974) ...................................................... 13

*Rowe v. Shake,*
  196 F.3d 778 (7th Cir. 1999) ........................................ 8

*Ruggles v. Ruggles,*
  49 F.4th 1097 (7th Cir. 2022) ..................................... 10

*Stone v. Bd. of Election Comm'rs for City of Chicago,*
  643 F.3d 543 (7th Cir. 2011) ...................................... 11

*Storer v. Brown,*
  415 U.S. 724 (1974) ............................................... 10, 14

*Williams v. Rhodes,*
  393 U.S. 23, (1968) ...................................................... 17

**Statutes**

Wis. Stat. § 7.75(1) ............................................................ 5

Wis. Stat. § 8.20 ........................................................... 5, 17

Wis. Stat. § 8.20(1) ........................................................... 3

Wis. Stat. § 8.20(2)(d) ....................................................... 3

Wis. Stat. § 8.20(4) ........................................................... 3

Wis. Stat. § 8.20(6) ........................................................... 3

Wis. Stat. § 8.21(1) ......................................................... 18

Wis. Stat. § 8.21(2) ............................................... 4, 16, 18

Wis. Stat. § 8.21(2)(a) ..................................................... 18

Wis. Stat. § 8.21(2)(b) ....................................................... 4

Wis. Stat. § 8.21(3) ......................................................... 18

Wis. Stat. § 8.21(4) ........................................................... 4

Wis. Stat. § 8.25(1) ........................................................... 5

Wis. Stat. § 8.30(1)(b) ............................................................ 4,17,  18

**Constitutional Provisions**

U.S. Const. Art. I, § 4 ................................................................ 16

U.S. Const. Art. II, § 1 ........................................................... 5, 16

**Rules**

Fed. R. App. P. 4(a)(1)(A) ........................................................... 2

**Admin. Code**

Wis. Admin. Code EL § 2.05 ................................................... 4, 17

Wis. Admin. Code EL § 2.07(2)(a) ............................................... 4

Wis. Admin. Code EL § 2.07(3)(a) ............................................... 4

Wis. Admin. Code EL § 2.07(3)(b) ............................................... 4

Wis. Admin. Code EL § 2.07 .................................................... 4, 17

**INTRODUCTION**

Pro se plaintiffs Frank and Vickie Marshall are Wisconsin voters and pledged presidential electors for 2024 independent presidential candidate, Shiva Ayyadurai. They filed this lawsuit challenging the Wisconsin Elections Commission's decision to exclude Ayyadurai from the Wisconsin ballot, after the Commission learned that Ayyadurai was born in India, and therefore does not meet the natural-born citizen requirement for the U.S. presidency.

The district court screened and dismissed Plaintiffs' complaint. That decision should be affirmed for two reasons. First, Plaintiffs' claims are moot because the 2024 election has passed, and the situation giving rise to their challenge is unlikely to recur in future elections. Second, Plaintiffs have not established that the Commission's decision was incorrect. The Commission appropriately rejected Ayyadurai's nomination papers because he was not eligible for the presidency, and Plaintiffs have not demonstrated that this decision misapplied the law or violated their rights in any way.

**JURISDICTIONAL STATEMENT**

The district court had jurisdiction over this case under 28 U.S.C. § 1331 because Plaintiffs' complaint, filed on August 28, 2024. (Dkt. 1), was brought under 42 U.S.C. of § 1983 and alleged violations of the First and Fourteenth Amendments.

This Court has jurisdiction over this case under 28 U.S.C. § 1291. On September 10, 2014, the district court screened and dismissed Plaintiffs' complaint (Dkt. 7), and judgment was entered that same day (Dkt. 8). Plaintiffs filed a timely notice of appeal on September 30, 2024, within 30 days of entry of judgment as required by Fed. R. App. P. 4(a)(1)(A). (Dkt. 9.) This is an appeal of a final order that disposed of all of Plaintiffs' claims.

## STATEMENT OF THE ISSUES

1. Federal courts may only decide live cases or controversies in which the outcome will affect the rights of the litigants before them. Plaintiffs bring ballot access claims in connection with the presidential election that took place several weeks ago, on November 5, 2024. Are Plaintiffs' claims moot?

2. The United States Constitution states that to be eligible to serve as the president, an individual must be a natural-born citizen. Ayyadurai was born in India, and the Wisconsin Elections Commission denied him ballot access on those grounds. Did the Commission properly exclude Ayyadurai and his pledged electors from the November 2024 ballot in Wisconsin?

## STATEMENT OF THE CASE

Plaintiffs-Appellants Frank and Vickie Marshall, appearing pro se, are two Wisconsin voters who wished to cast electoral votes for independent

presidential candidate Shiva Ayyadurai in the November 2024 presidential election. (Dkt. 1 ¶ 1.) This case arises from a decision by Defendant-Appellee the Wisconsin Elections Commission to exclude Ayyadurai from the Wisconsin ballot because he was born outside the United States and does not meet the eligibility criteria for the presidency under the U.S. Constitution. Plaintiffs also named the Commission's commissioners and its administrator as defendants.

## I. Wisconsin's nomination paper process for independent presidential candidates

To appear on the Wisconsin ballot in a presidential election, independent candidates must complete the nomination paper process in accordance with Wis. Stat. § 8.20(1) ("Independent nominations may be made for any office to be voted for at any general or partisan special election."). Nomination papers must take certain form and be signed by a specific number of Wisconsin voters. For example, the nomination papers for independent presidential and vice presential candidates must list pledged presidential electors from each congressional district who will vote for the candidates in the electoral college. Wis. Stat. § 8.20(2)(d). The number of required signatures is "not less than 2,000 nor more than 4,000" voters. Wis. Stat. § 8.20(4).

Candidates for office in Wisconsin must also file a declaration of candidacy. Wis. Stat. § 8.20(6). The declaration of candidacy must contain certain

information about the candidate. Wis. Stat. § 8.21(2), (4). The declaration also must be signed and sworn by the candidate and attest, among other things, "[t]hat the signer meets, or will at the time he or she assumes office meet, applicable age, citizenship, residency, or voting qualification requirements, if any, prescribed by the constitutions and laws of the United States and of this state." Wis. Stat. § 8.21(2)(b).

The Commission, which reviews nomination papers for independent presidential candidates, "may refuse to place the candidate's name on the ballot if any of the following apply," including if "[i]t conclusively appears, either on the face of the nomination papers offered for filing, or by admission of the candidate or otherwise, that the candidate is ineligible to be nominated or elected." Wis. Stat. § 8.30(1)(b).

The Commission has also promulgated rules related to the treatment and sufficiency of nomination papers and challenges to nomination papers. Wis. Admin. Code EL §§ 2.05, 2.07. This process allows for challenges made by verified complaint, with the burden on the challenger to prove the challenged candidate is not eligible. Wis. Admin. Code EL § 2.07(2)(a), (3)(a). Candidates who have been challenged have the right to file a response. Wis. Admin. Code EL § 2.07(3)(b).

When an independent presidential candidate's nomination papers are properly filed and sufficient, the candidate's name appears on the Wisconsin

ballot, and the names of their pledged presidential electors do not. However, in the election, "[a] vote for the president and vice president nominations of any party is a vote for the electors of the nominees." Wis. Stat. § 8.25(1). When presidential and vice-presidential candidates are selected by Wisconsin voters, the candidates' presidential electors will represent and cast votes for them for purposes of the electoral college. Wis. Stat. § 7.75(1).

## II.    Ayyadurai's nomination papers and ballot access challenge

On August 6, 2024, Plaintiffs submitted nomination papers to the Commission for Ayyadurai to appear as an independent candidate for president on Wisconsin's ballot in the November 2024 election. (Dkt. 1 ¶ 23.) The nomination papers contained 3,197 signatures and named ten presidential electors, as required under Wis. Stat. § 8.20. (Dkt. 1 ¶ 23.)

Soon after, a Wisconsin voter named Michael Hoffman challenged Ayyadurai's nomination papers by filing a ballot access challenge, alleging that Ayyadurai was not a "natural born citizen" of the United States, a qualification for president under article II, section 1, clause 5 of the United States Constitution. (Dkt. 1. Ex. A.) The challenge relied on a recent decision by the United States District Court for the District of Columbia, *Ayyadurai v. Garland*, No. CV 23-2079 (LLA), 2024 WL 2015287, at *1 (D.D.C. May 7, 2024), in which Ayyadurai was the plaintiff and admitted he was born in Mumbai, India.

The Commission met on August 27, 2024, to decide challenges to candidates. Ayyadurai and Frank Marshall appeared and presented arguments. (Dkt. 1 ¶¶ 33–34.) Both argued that under Wisconsin law, a vote for a presidential candidate is a vote for the candidate's pledged electors. And because Hoffman named Ayyadurai rather than any of the pledged presidential electors in his challenge, the Commission lacked jurisdiction over the objector petition. (Dkt. 1 ¶¶ 33–34.)

The Commission voted, 5-1, that Ayyadurai does not meet the constitutional requirements for the Office of President of the United States because he is foreign-born, and therefore would not be on the ballot in Wisconsin. (*See* Dkt. 1 ¶ 35; *see also* Wisconsin Elections Commission, Ballot Access Meeting Open Session Minutes, August 27, 2024.[1])

## III.   Procedural background for Plaintiffs' lawsuit

Plaintiffs filed this lawsuit on August 28, 2024, alleging that the Commission violated their First and Fourteenth Amendment rights by excluding Ayyadurai from the Wisconsin ballot. (Dkt. 1.) The complaint raises three claims, that the Commission (1) lacks subject-matter jurisdiction over

---

[1] The approved meeting minutes for the August 27, 2024 Commission meeting are available at: https://elections.wi.gov/sites/default/files/documents/August%2027%2C%202024%2C%20Open%20Session%20Minutes%20APPROVED.pdf (last visited December 2, 2024).

Plaintiffs and Ayyadurai; (2) lacks personal jurisdiction over the nomination papers filed in support of Ayyadurai; and (3) lacks subject-matter jurisdiction over the objector petition. (Dkt. 1:15, 21, 25.) Plaintiffs also moved for a temporary restraining order and preliminary injunction reinstating Ayyadurai to the Wisconsin ballot. (Dkt. 3.)

On September 24, the district court screened and dismissed Plaintiffs' complaint as "legally frivolous." (Dkt. 7.) The court stated that because Ayyadurai is not a natural-born U.S. citizen, the declaration of candidacy accompanying his nomination papers was invalid, and the Commission was required to reject his nomination papers. (Dkt. 7:4.) The court concluded that Ayyadurai "is not qualified to hold the office of president of the United States and [the Commission] had all the statutory authority necessary to reject his placement on the ballot." (Dkt. 7:4.)

The court also dismissed Plaintiffs' motions for a temporary restraining order and preliminary injunction. (Dkt. 7:4.) Plaintiffs appealed the district court's decision. (Dkt. 9.)

## SUMMARY OF THE ARGUMENT

Plaintiffs' appeal fails for two reasons. First, this Court lacks jurisdiction over the appeal because Plaintiffs' claims are moot. Plaintiffs filed this action to restore Ayyadurai's ballot access in time for the November 5, 2024, presidential election. But the election has come and gone, and there is no

meaningful relief that this Court could now provide to Plaintiffs. And Plaintiffs' claims do not fall within an exception to the mootness doctrine because the circumstances of this case and the nature of Plaintiffs' challenge are highly unusual, and unlikely to recur in future elections.

Second, the Commission properly rejected Ayyadurai's nomination papers and denied him ballot access. The Commission has jurisdiction to determine the candidates who qualify for Wisconsin's ballot, and it correctly applied the constitutional eligibility requirements for the presidency to Ayyadurai rather than to his pledged electors. Plaintiffs have not otherwise demonstrated that Wisconsin statues impose any impermissible requirements on the nomination paper process.

## STANDARD OF REVIEW

District courts have the authority to screen complaints filed by all litigants. *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999); *Hoskins v. Poelstra*, 320 F.3d 761 (7th Cir. 2003). The complaint must comply with the Federal Rules of Civil Procedure and state a plausible claim to relief. *Hoskins*, 320 F.3d at 763. Here, Plaintiffs' complaint was dismissed as "frivolous," meaning that it lacked a plausible legal or factual basis. *Felton v. City of Chicago*, 827 F.3d 632, 635, (7th Cir. 2016.) The standard of appellate review of a determination of frivolousness is "abuse of discretion." *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 787, (7th Cir. 1995.) The court must accept the

allegations in the complaint as true and construe the allegations of a pro se plaintiff generously. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

## ARGUMENT

Plaintiffs contend that that the Commission's decision to exclude Ayyadurai from the Wisconsin ballot was arbitrary and improper. Their core contention is that the Commission misapplied ballot-access requirements to Ayyadurai's nomination papers because it is Plaintiffs—not Ayyadurai—who are the actual candidates on the ballot in a presidential election. They also contend that ballot-access cases do not become moot just because an election has passed.

But Plaintiffs' claims *are* moot. The 2024 presidential election has come and gone, and Plaintiffs' claims are not likely to recur in future elections. And the Commission properly declined to place Ayyadurai on the Wisconsin ballot for president because he is foreign born. States have the power to establish ballot access requirements, the Commission has jurisdiction to determine which candidates qualify for the ballot, and the Commission correctly applied Wisconsin statutes and the constitutional eligibility criteria to Ayyadurai's nomination papers and declaration of candidacy.

## I. Plaintiffs' claims are moot because the presidential election is over, and they are not capable of repetition yet evading review.

Plaintiffs' claims to gain ballot access for Ayyadurai are moot and do not qualify for any exception under the mootness doctrine.

Article III of the United States Constitution requires federal courts to decide only live cases or controversies. *Ruggles v. Ruggles*, 49 F.4th 1097, 1099 (7th Cir. 2022). This means that federal courts may not resolve questions that do not affect the rights of the parties before them. *Id*. If an intervening event occurs during a case that makes it impossible for the court to provide relief to a litigant, or the litigant no longer has a stake in the outcome of the case, the appeal is moot and must be dismissed. *Id*.

Here, Plaintiffs' claims are moot. They sought access to the ballot for the 2024 presidential election, but that November election has come and gone. A federal court cannot provide relief to Plaintiffs by ordering Ayyadurai's name to be placed on the ballot, so the case is moot and must be dismissed.

There is a mootness exception for claims that are capable of repetition yet will evade judicial review if not considered. *Ciarpaglini v. Norwood*, 817 F.3d 541, 546 (7th Cir. 2016). This exception applies when: "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Id*.

Courts have recognized the capable-of-evading review exception in elections cases, and ballot-access cases in particular. *See Lee v. Keith*, 463 F.3d 763, 767 (7th Cir. 2006) (citing *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974)). The reason is because elections run on tight deadlines and there is often not time

to litigate ballot access before an election has passed—but ballot access statutes present common issues that may arise year after year. *Hero v. Lake Cnty. Election Bd.*, 42 F.4th 768, 773 (7th Cir. 2022). This does not mean, however, that all ballot access cases remain live controversies beyond an election. *See, e.g., Stone v. Bd. of Election Comm'rs for City of Chicago*, 643 F.3d 543, 545 (7th Cir. 2011); *Gill v. Linnabary*, 63 F.4th 609, 614 (7th Cir. 2023). There must be a reasonable expectation that a plaintiff's claims will affect future elections. *See Moore v. Ogilvie*, 394 U.S. 814, 816 (1969).

Here, the capable-of-repetition exception does not apply to Plaintiffs' claims. That is because there is no reason to believe that similar claims will be brought against the Commission in the future. Plaintiffs' challenge arises from unusual circumstances, a foreign-born individual running for president, and is based on extremely unconventional legal theories. It is highly implausible, for example, that a foreign-born, independent presidential candidate's pledged presidential electors will challenge the Commission's decision to deny ballot access to their candidate. It is even more unlikely that those presidential electors will say that the Commission incorrectly applied the constitutional eligibility requirements for the presidency because they are the actual candidates on the ballot, not the candidate himself. Even taking a broader view, there is no basis to expect a future challenge to the Commission's

authority to apply the constitutional age, citizenship, and residence eligibility requirements to a presidential candidate.

Further, whether a ballot access claim becomes moot after an election can depend on whether the candidate is likely to run again. In *Hero*, for example, a candidate was precluded from a county ballot and later sued for a declaration that his rights were violated and an injunction prohibiting similar conduct in future elections. 42 F.4th at 770. This Court concluded that his claims were capable of repetition yet evading review, because he "could not litigate his claim before the election on appeal, and he has declared his intent to run again." *Id.* Similarly, *Gill v. Scholz*, 962 F.3d 360 (7th Cir. 2020), involved an independent candidate's challenge to signature requirement on equal protection grounds. This Court concluded that even though the relevant election passed, the claims were not moot because the candidate was unable to litigate his claims before the election was held and he had expressed intent to run for office in the next election. *Id.* at 363 n.3; *see also Acevedo v. Cook Cnty. Officers Electoral Bd.*, 925 F.3d 944, 947 (7th Cir. 2019) ("[T]he timeline for collecting signatures to appear on a primary ballot is too short to fully litigate a challenge to the signature requirement. In light of this, and because [the candidate] has expressed his intention to run for office [ ]again, his challenge remains live").

Here, it makes little sense for Ayyadurai to run for the presidency again. His eligibility for the presidency was rejected in federal court. *Ayyadurai,* No. CV 23-2079 (LLA), 2024 WL 2015287, at *1. Nothing in Plaintiffs' complaint or their appellate brief suggests that Ayyadurai wishes or plans to run again, or that Plaintiffs will again serve as his pledged electors. (Dkt. 1; App.'s Br. 16–17.) Plaintiffs' claims are not likely to recur in future elections.

Directly contradicting cases like *Hero*, *Gill*, and *Acevedo*, Plaintiffs contend that whether a candidate intends to run in future elections is irrelevant to the question of mootness. (App.'s Br. 17). They rely on *Ogilvie,* 394 U.S. at 816, and *Richardson v. Ramirez*, 418 U.S. 24, (1974) for this idea. (App.'s Br. 17). But as Plaintiffs acknowledge, *Ogilvie* did not discuss the candidate's future plans at all. (App.'s Br. 17.) For that reason, it is unclear why *Richardson* included an isolated statement about *Ogilvie* that the candidate there "was not apt to be revived in a future election." *Richardson*, 418 U.S. at 35.

Plaintiffs also cite ten cases in addition to *Ogilvie* in which the Supreme Court issued post-election ballot access decisions. (App.'s Br. 17.) They assert that these cases mean that it does not matter for mootness purposes "whether the plaintiff [is] likely to run in a future election or not." (App.'s Br. 17.) That is not what any of these cases say. *Jenness v. Fortson*, 403 U.S. 431 (1971), *Lubin v. Panish*, 415 U.S. 709 (1974), *Communist Party of Indiana v. Whitcomb*, 414 U.S. 441 (1974), and *Munro v. Socialist Workers Party*,

479 U.S. 189 (1986), do not discuss mootness. Plaintiffs' other cases, *Am. Party of Texas v. White*, 415 U.S. 767 (1974), *Storer v. Brown*, 415 U.S. 724 (1974), *Mandel v. Bradley*, 432 U.S. 173 (1977), *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Norman v. Reed*, 502 U.S. 279 (1992), merely restate the rule that that an election does not automatically moot a ballot access case. And *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173 (1979), concluded that a case was moot because there was no reasonable expectation that the claims at issue were likely to recur in future elections.

Finally, Plaintiffs discuss but provide no citation for *Lupo et. al. v. Tennessee Secretary of State Tre Hargett, et. al.* (App.'s Br. 17−18). This case appears to be a memorandum opinion issued in a similar challenge to Ayyadurai's ballot access brought in the United States District Court for the Middle District of Tennessee. *See Lupo v. Hargett*, No. 3:24-CV-01088, 2024 WL 4583524, at *1 (M.D. Tenn. Oct. 25, 2024). There, the district court concluded that plaintiffs' claims were not moot because it is possible "that some elector candidates in the future will pledge their electoral college votes to a presidential candidate who is deemed ineligible to serve as President." *Id.* at *3.

But *Lupo* is not binding on this Court. And *Lupo* was issued on October 25, 2024, before the election and at a time when the court still could have ordered relief to place Ayyadurai on the ballot. That is not the case here because the

election is over, and it is too late for Plaintiffs to obtain their requested relief. Plaintiffs' claims are moot and are not capable of repetition yet evading review.

## II. The Commission properly denied Ayyadurai's access to the Wisconsin presidential ballot

Plaintiffs also contend that the Commission arbitrarily excluded Ayyadurai's name from the Wisconsin ballot.

Their arguments on this point are difficult to understand. The Commission understands them to be threefold: (1) when a presidential candidate's name appears on a state ballot, voters actually select the candidate's pledged presidential electors rather than the candidate himself—so the constitutional eligibility requirements for the office of the president should not have been applied at the nomination paper stage; (2) the Constitution's citizenship requirement applies to holding office, but not running for office; and (3) the U.S. Constitution does not allow states to review or impose additional qualifications for the office of the president.

These arguments fail for a multitude of reasons. To begin, the Commission's decision was correct. Simply put, the U.S. Constitution states that only natural-born citizens are eligible to become president. U.S. Const. Art. II, § 1. By Ayyadurai's own admission, he was born in India. He therefore could not validly attest to the Commission that he met the applicable requirements for

the presidency under the U.S. Constitution. Wis. Stat. § 8.21(2). The Commission properly excluded him from the ballot.

Plaintiff's contention that the U.S. Constitution permits a candidate to *run* for president but not *hold* that office is incorrect. The U.S. Constitution states that "No Person except a natural born Citizen . . . shall be eligible to the Office of President." U.S. Const. Art. II, Sec 1, Clause 5. This language does not distinguish between running for and holding office. Plaintiffs cite no legal authorities or principles of constitutional interpretation to support this idea, nor do they demonstrate that it has ever been applied. And on a practical level, it does not make sense to allow ineligible candidates to run for president when they are constitutionally barred from holding the position in the first place. This is why states are permitted to examine candidate eligibility and ballot access, to ensure that only legally qualified candidates appear on ballots.

Plaintiffs are also incorrect that states may not review a presidential candidate's edibility for office. The law is clear that states have not only the power but a "duty to craft the rules governing federal elections." *Moore v. Harper*, 600 U.S. 1, 10 (2023); *Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8 (2013) (state legislatures have a "duty" to prescribe the time, place, and manner of electing candidates for federal offices).

The duty is rooted in Art. I § 4 of the U.S. Constitution, which states that "The Times, Places and Manner of holding Elections for Senators and

Representatives, shall be prescribed in each State by the Legislature thereof." The provision extends to presidential elections. *ACORN v. Edgar*, 56 F.3d 791, 793 (7th Cir. 1995) (citing *Burroughs v. U.S.*, 290 U.S. 534 (1934)). And it extends to ballot access. The power to establish election procedures expressly includes "broad authority to impose reasonable, nondiscriminatory restrictions on access to the ballot." *Indiana Green Party v. Morales*, 113 F.4th 739, 742 (7th Cir. 2024); *Williams v. Rhodes*, 393 U.S. 23, 28, (1968) (states have power to regulate ballot access); *Cook v. Gralike*, 531 U.S. 510, 523 (2001) (states may establish procedural regulations for balloting). Indeed, all fifty states have ballot access eligibility requirements that candidates must adhere to. *Lee v. Keith*, 463 F.3d 763, 768 (7th Cir. 2006).

In accordance with its power to regulate elections, the Wisconsin Legislature has established ballot access eligibility requirements in Chapter 8 of the Wisconsin Statutes, including requirements for nomination papers, signatures, declarations of candidacy, eligibility to be placed on the ballot for presidential candidates (and, in fact for all levels of elections). *See* Wis. Stat. §§ 8.20, 8.21, 8.30. And the Commission has promulgated rules outlining the procedures for challenging a candidate's ability to be placed on the ballot. *See* Wis. Admin. Code EL §§ 2.05, 2.07. Plaintiffs fail to explain why Wisconsin's ballot-access laws are impermissible.

Finally, Plaintiffs' contention that that the Commission incorrectly applied the constitutional eligibility requirements for president to Ayyadurai rather than them is without merit. Wisconsin law is clear that when reviewing nomination papers for an independent presidential candidate, the focus of the review is on the candidate for office, not on his pledged presidential electors.

To illustrate, the declaration for candidacy must be signed by the "candidate for a named office." Wis. Stat. § 8.21(2)(a). The declaration must include the "candidate's name in the form in which it will appear on the ballot." Wis. Stat. § 8.21(3). It also must state that the "signer meets, or will at the time he or she assumes office meet, applicable age, citizenship, residency, or voting qualification requirements, if any, prescribed by the constitutions and laws of the United States and of this state," and that "the signer will otherwise qualify for office if nominated and elected." Wis. Stat. § 8.21(2).

Further, the Commission "may refuse to place the candidate's name on the ballot if any of the following apply," including if "[i]t conclusively appears, either on the face of the nomination papers offered for filing, or by admission of the candidate or otherwise, that the candidate is ineligible to be nominated or elected." Wis. Stat. § 8.30(1)(b). Presidential electors do not file declarations of candidacy, their names do not appear on the ballot, and presidential electors do not hold office. So, these statutory requirements do not apply to electors like Plaintiffs. *See* Wis. Stat. § 8.21(1). Indeed, it is "well-understood that modern

presidential elections are about the presidential candidates, not the people forming the Electoral College." *Lauters v. Nebraska Sec'y of State*, No. 4:24-CV-3175, 2024 WL 4517911, at *3 (D. Neb. Oct. 17, 2024). If the Legislature intended to impose this review on pledged presidential electors rather than the candidates themselves, that is what it would have done, but it didn't.

At least two other courts that have considered cases involving Ayyadurai have rejected these arguments. *Lupo* dismissed claims similar to Plaintiffs', determining that states "have the right to prevent an ineligible, non-natural-born-citizen from running for President." *Lupo*, 2024 WL 4583524 at *5. *Lupo* explained it is well-understood that today's presidential elections are about the presidential candidates, not members of the electoral college, and it is reasonable for states to deny ballot access to electors who have pledged to support a candidate who is constitutionally barred from the presidency. *Id.* at *5. *See also Lauters*, No. 4:24-CV-3175, 2024 WL 4517911, at *6 (D. Neb. Oct. 17, 2024)) (Nebraska is not "obliged to place a presidential candidate on the ballot who is constitutionally barred from taking office.")

Plaintiffs provide no valid reason why the Commission's decision was arbitrary or otherwise denied them of their rights. The district court should be affirmed.

**CONCLUSION**

For the reasons explained above, this Court should affirm the district court's decision to dismiss Plaintiffs' complaint.

Dated this 3rd day of December 2024.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

Electronically signed by:

s/Faye B. Hipsman
FAYE B. HIPSMAN
Assistant Attorney General
State Bar #1123933

BRIAN P. KEENAN
Assistant Attorney General
State Bar #1056525

Attorneys for Defendants-Appellees

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9487 (FBH)
(608) 266-0020 (BPK)
(608) 294-2907 (Fax)
hipsmanfb@doj.state.wi.us
keenanbp@doj.state.wi.us

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), typeface requirements of Fed. R. App. P. 32(a)(5), and type style requirements of Fed. R. App. P. 32(a)(6).

This brief contains 4,362 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 13 point Century Schoolbook.

Dated this 3rd day of December, 2024.

Electronically signed by:

s/Faye B. Hipsman
FAYE B. HIPSMAN
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on December 3, 2024, I electronically filed the foregoing Appellees' Brief with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

I further certify that two copies of the above document were mailed to:

FRANK AND VICKIE MARSHALL
4270 WHITE PINE DR.
GREEN BAY, WI 54313

Dated this 3rd day of December, 2024.

Electronically signed by:

s/Faye B. Hipsman
FAYE B. HIPSMAN
Assistant Attorney General